IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

```
JOHN SUTTON,                           No. C 07-1109 CW

         Plaintiff,
                                       ORDER DENYING
    v.                                 PLAINTIFF's
                                       MOTION TO REMAND
BRANDYWINE REALTY TRUST; DANIEL        AND FOR COSTS AND
CUSHING; and DOES 1 through 20,        FEES

         Defendants.
                                   /
```

Plaintiff John Sutton originally brought this action in state court.  Defendants Brandywine Realty Trust and Daniel Cushing removed the action and Plaintiff now seeks to remand this action to state court.  Defendants oppose the motion.  The matter was decided on the papers.  Having considered all of the parties' papers, the Court denies Plaintiff's motion.

                              BACKGROUND

Defendant Brandywine is Plaintiff's former employer. According to Plaintiff's complaint, while he was working for Defendant Brandywine, he learned that his direct supervisor, Defendant Cushing, had his secretary take an online real estate

exam, pretending to be him, in violation of California law. After Plaintiff reported Defendant Cushing's illegal activity to Defendant Brandywine's general counsel, Defendant Cushing retaliated against Plaintiff. Defendant Cushing attacked Plaintiff's personal and professional integrity, accusing him of officer misconduct, and tried to force him into an early retirement. It was made clear to Plaintiff that neither Defendant Cushing nor any other high-level executive at Defendant Brandywine wanted Plaintiff to continue working for Defendant Brandywine. Plaintiff's working conditions became intolerable.

Plaintiff submitted his Notice of Termination. He contended that, because he was forced to leave his employment for "good reason," he was entitled to a severance payment. Defendant Brandywine disagreed.

Under the Prentiss Properties Trust Change in Control Severance Protection Plan for Key Employees (the Severance Plan), participants who experience a "Qualifying Termination" are entitled to a severance payment; participants who do not experience a "Qualifying Termination" are not. "Qualifying Termination" is defined as "termination of employment (1) by the Company for any reason other than Cause" or "(2) by the Participant for Good Reason." Koss Dec., Ex. A at § 2.20. The Severance Plan defines "Good Reason" to mean:

> (a) The Company requiring the Participant's relocation more than fifty (50) miles from the Participant's primary office subsequent to the Change in Control, without such Participant's consent;
>
> (b) A material adverse alteration in the nature of his or her position, provided that (i) a change of title or (ii) a change

2

>of reporting and, in either case, a concomitant change of duties, shall not be considered a material adverse alteration unless the duties are materially inconsistent with the Participant's duties at the time of the Change in Control took place [sic];
>
>(c) Exclusion from the Company's, or upon a Change of Control, its successor's, long term incentive plan or reduction by the Company of the Participant's (i) annual base salary, or (ii) target bonus; or
>
>(d) An assignment of duties to the Participant that are materially inconsistent with his or her job description at the time the Change in Control took place.

Id. at § 2.16.

On January 24, 2007, Plaintiff filed this action in the Alameda County Superior Court, alleging breach of contract, wrongful termination and intentional infliction of emotional distress. His breach of contract claim is based on Defendant Brandywine's refusal to pay him under the Severance Plan. Less than a month later, Defendants removed the action to this Court pursuant to 28 U.S.C. § 1441(b).

## LEGAL STANDARD

A defendant may remove a civil action filed in state court to federal district court so long as the district court could have exercised original jurisdiction over the matter. 28 U.S.C. § 1441(a). Section 1447 provides that if at any time before judgment it appears that the district court lacks subject matter jurisdiction over a case previously removed from state court, the case must be remanded. 28 U.S.C. § 1447(c). On a motion to remand, the scope of the removal statute must be strictly construed. See Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction

3

means that the defendant always has the burden of establishing that removal is proper." Id.  Courts should resolve doubts as to removability in favor of remanding the case to state court. See id.

## DISCUSSION

Section 1441(b) provides, "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."  28 U.S.C. § 1441(b).  Defendants contend that the Severance Plan falls under the purview of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, and that, therefore, removal was proper because this is a civil action arising under ERISA, a law of the United States. See 29 U.S.C. § 1144(a) (state law claims that relate to any employee benefit plan, as defined by ERISA, are preempted and converted to federal questions).  Plaintiff argues that the Severance Plan is not an employee benefit plan within the meaning of ERISA and that, even if it is, his claims do not "relate to" an ERISA plan.

The Ninth Circuit instructs that there is a "relatively simple test" to determine whether a severance plan is covered by ERISA: "does the benefit package implicate an ongoing administrative scheme?"  Delaye v. Agripac, Inc., 39 F.3d 235, 237 (9th Cir. 1994).  In Bogue v. Ampex Corp, 976 F.2d 1319, 1321 (9th Cir. 1992), the special compensation program provided for severance benefits for ten executives if they were not offered "substantially equivalent employment" after they were terminated.  Substantially

4

equivalent employment was defined as job that included responsibilities similar to those in the employee's previous job. The court found that this program required more than the "theoretical possibility of a one-time obligation in the future"; rather, it required a "case-by-case, discretionary application." 976 F.2d at 1322-23.  Because the employer was obliged "to apply enough particularized, administrative, discretionary analysis to make the program. . . a 'plan,'" the Ninth Circuit concluded that the severance plan was covered under ERISA.  976 F.2d at 1323.

In Delaye, however, the Ninth Circuit concluded the opposite. 39 F.3d at 236.  There, the employee was required to pay the plaintiff his yearly base compensation if he was terminated for cause and to pay him a larger benefits package if he was terminated without cause.  The court found that this contract between the employer and the plaintiff did not implicate an ongoing administrative scheme because "there is nothing discretionary about the timing, amount or form of the payment." Id. at 237.  The court explained that the situation there was different than that in Bogue in two ways.  First, determining whether a terminated employee was offered "substantially similar employment" required "ongoing administrative analysis"; whereas, once Delaye's employer terminated him, the severance calculation was "a straight forward computation of a one-time obligation." Id.  Second, the severance package in Bogue covered ten executives, requiring the employee to make ten separate discretionary determinations; the severance package in Delaye covered only the plaintiff.  Id.

1    At issue in <u>Velarde v. PACE Membership Warehouse, Inc.</u>, 105 F.3d 1313 (9th Cir. 1997), was a "stay on letter'" offered to at least twenty-five employees. The letter provided that employees, who stayed with the company until a specified date and who were not terminated for cause and who did not voluntarily resign, would receive a severance package and a bonus. 105 F.3d at 1315. In concluding that this also was not a severance plan covered by ERISA, the Ninth Circuit examined both <u>Bogue</u> and <u>Delaye</u>:

> Here, as in <u>Delaye</u>, the employer was simply required to make a single arithmetical calculation to determine the amount of the severance benefits. While in both cases, a "for cause" termination would change the benefits due to the employee, the <u>Delaye</u> court did not deem this minimal quantum of discretion sufficient to turn a severance agreement into an ERISA plan . . . . [T]he key to our holding in <u>Bogue</u> was that there was "<u>enough</u> ongoing, particularized, administrative discretionary analysis," to make the plan an "ongoing administrative scheme," not that the agreement simply required some modicum of discretion. The level of discretion, if any, which PACE was required to exercise in implementing the agreement was slight. It failed to rise to the level of ongoing particularized discretion required to transform a simple severance agreement into an ERISA employee benefits plan.

<u>Id.</u> at 1317 (emphasis in original and inner citation omitted).

   Plaintiff argues that the Severance Plan here is akin to those in <u>Delaye</u> and <u>Velarde</u>, not <u>Bogue</u>. He contends that "Good Reason" is similar to "for cause" and, therefore, the plan here lacks the required ongoing administrative scheme necessary to be covered by ERISA. This argument, however, is not persuasive: Plaintiff's reliance on <u>Delaye</u> and <u>Velarde</u> is misplaced.

   "Good Reason," as defined in the Severance Plan, is not equivalent to "for cause." As noted above, "Good Reason" has four different meanings. It does not require an "ongoing administrative scheme" to determine whether a participant is relocated more than

6

fifty miles without her consent or whether a participant has her salary reduced. See Koss Dec., Ex. A at § 2.16 (a), (c). If "Good Reason" were defined to include solely those two definitions, the Court would conclude that the "minimal quantum of discretion sufficient to turn a severance agreement into an ERISA plan" is not present. Velarde, 105 F.3d at 1317. But, under the Severance Plan, "Good Reason" also includes "a material adverse alteration in the nature of a participant's position" and an assignment of duties to the participant that is "materially inconsistent with his or her job description at the time the Change in Control took place." Koss Dec., Ex. A at § 2.16 (b), (d). Just as it was impossible in Boque to determine whether new employment was "substantially equivalent" to terminated employment without an ongoing administrative scheme, here, it is also impossible to determine whether there has been a "material adverse alteration" or an assignment of new duties that are "materially inconsistent" with former duties without an ongoing administrative scheme. The quantum of discretion required under these two definitions of "Good Reason" is sufficient to turn a severance agreement into an ERISA plan.

In other words, the answer to whether the Severance Plan here implicates an ongoing administrative scheme is, "yes." See Delaye, 39 F.3d at 237. Therefore, the Court concludes that the Severance Plan is an "employee benefit plan" for the purposes of ERISA. Further, the Court concludes that Plaintiff's breach of contract claim "relates to" an ERISA plan because it is a claim for payment under the plan. Because removal was proper, Plaintiff's motion to

remand is denied.

## CONCLUSION

Defendants meet their burden of establishing that removal is proper; therefore, the Court DENIES Plaintiff's motion to remand and for costs and fees (Docket No. 22).  The hearing scheduled for August 16, 2007 is VACATED.

IT IS SO ORDERED.

Dated: 8/7/07

CLAUDIA WILKEN
United States District Judge